DIETZ, Judge.
 

 *96
 
 Defendant Matthew Joseph Schmieder appeals his conviction for second degree murder following a fatal motor vehicle accident. Schmieder argues that the trial court erroneously admitted evidence of his past driving offenses and that, without that evidence, the trial court should have granted his motion to dismiss. He also argues that the trial court erred by entering judgment on the Class B2 second degree murder offense because the indictment only was sufficient to charge the Class B1 version of that offense.
 

 As explained below, the trial court did not abuse its discretion in admitting Schmieder's driving record because the court properly found sufficient similarity and temporal proximity between the charged offense and a lengthy pattern of past driving offenses. As a result, the trial court also did not err in denying Schmieder's motions to dismiss because the driving record provided substantial evidence from which the jury could infer the element of malice. Finally, the indictment in this case was sufficient to charge second degree murder under all theories permitted
 
 *325
 
 by law and Schmieder was not misled by the indictment. We therefore find no error in the trial court's judgment.
 

 Facts and Procedural History
 

 On 22 December 2016 around 7:30 p.m., Evelyn Argueta was driving along Kanuga Road in Henderson County. It was dark and the road was two lanes with a double yellow line down the middle and narrow shoulders. The road has turns and inclines and a posted speed limit of 40 mph. Argueta noticed a white BMW behind her and became "a little scared" when the BMW passed her across the double yellow line without using turn signals. Argueta estimated that the BMW was travelling at 45 to 50 mph.
 

 After passing Argueta, the BMW increased its speed and caught up to a Silverado pickup truck. The BMW started to pass the Silverado without using any turn signals, and Argueta thought that the BMW was
 
 *97
 
 following too close behind the Silverado to see around it. When the BMW entered the left lane to pass, it became apparent that there was an oncoming red pickup truck in that lane. The BMW hit the brakes and attempted to get back into the right lane, but it was too late. The BMW collided head-on with the oncoming red truck and then hit the Silverado. Argueta estimated that the BMW was going 55 to 60 mph at the time of the attempted pass.
 

 First responders arrived on the scene in response to a 911 call. They observed that there had been a head-on collision with a heavy impact, a distance of about 100 feet between the vehicles, and substantial debris in the roadway and on the side of the road. They heard a voice calling for help from the white BMW. The red pickup truck had to be opened with hydraulic spreaders. The driver of the red pickup truck, 17-year-old Derek Miller, had no pulse and was crushed between the steering wheel and the backseat of his vehicle. A paramedic was able to crawl into the vehicle and determined that Miller had injuries "inconsistent with life" and was deceased.
 

 After determining that Miller was deceased, paramedics began work on the white BMW. Defendant Matthew Schmieder, the driver of the BMW, was pinned inside. First responders extracted him from the vehicle and transported him to the hospital. Schmieder told paramedics, "I know I caused this," and asked about the other driver's injuries. Paramedics smelled an odor of alcohol coming from Schmieder and asked him how much he had to drink. Schmieder responded that he did not know.
 

 On 15 May 2017, the State indicted Schmieder for second degree murder. The body of the indictment alleged that Schmieder "unlawfully, willfully and feloniously and of malice aforethought did kill and murder Derek Lane Miller." In the murder indictment's header, which included form boxes, the State checked the box labeled "Second Degree," but did not check either of the two additional boxes beneath that one, which were labeled "Inherently Dangerous Without Regard to Human Life" and "Unlawful Distribution of Substance."
 

 Before trial, Schmieder moved to exclude his record of prior driving convictions. The trial court later denied Schmieder's motion to exclude his driving record, finding that Schmieder's prior driving convictions "are similar" and "that there is not much of a gap in time between convictions over the years." The court allowed Schmieder's motion to exclude evidence of four prior accidents that did not result in charges as well as Schmieder's motion to exclude some of the letters he had received from
 
 *98
 
 the DMV regarding the status of his driver's license. The court determined that, under Rule 403, the danger of unfair prejudice from this evidence substantially outweighed its probative value.
 

 The State's evidence from Schmieder's driving record showed that on 23 November 2016, Schmieder was stopped for an expired plate and was issued a citation for driving with a suspended license. At the time of the December 2016 accident, Schmieder's license had been suspended since 22 May 2014 for failure to appear for a 2013 infraction of failure to reduce speed. Since Schmieder's driver's license was originally issued in September 1997, he had multiple driving convictions including the following: failure to stop for siren or red light, illegal passing, speeding 80 in a 50, and reckless driving in March
 
 *326
 
 1998; speeding 64 in a 55 in September 2000; speeding 64 in a 55 in October 2000; speeding 70 in a 50 in August 2003; driving while license revoked and speeding 54 in a 45 in January 2005; speeding 54 in a 45 in December 2006; failure to reduce speed resulting in accident and injury in February 2007; a South Carolina conviction for speeding 34 in a 25 in March 2011; speeding 44 in a 35 in January 2012; speeding 84 in a 65 in May 2013; and failure to reduce speed in February 2017 (the conviction corresponding to the 2013 charge on which Schmieder failed to appear). Six of these prior convictions resulted in suspension of Schmieder's license.
 

 At the close of the State's evidence and again at the close of all of the evidence, Schmieder moved to dismiss the charges. The trial court denied both motions. After deliberations, the jury acquitted Schmieder of Class B1 second degree murder and convicted him of Class B2 second degree murder. The trial court sentenced Schmieder to 157 to 201 months in prison. Schmieder timely appealed.
 

 Analysis
 

 I. Admission of Driving Record
 

 Schmieder first argues that the trial court erred in admitting his prior driving record under Rule 404(b) of the Rules of Evidence without sufficient evidence establishing temporal proximity and factual similarity between the past driving convictions and the present offense. We disagree.
 

 Rule 404(b) permits the admission of evidence of "other crimes, wrongs, or acts" for purposes other than to show the defendant "acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b). Such evidence may be admitted under this rule "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake,
 
 *99
 
 entrapment or accident."
 
 Id.
 
 "We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion."
 
 State v. Beckelheimer
 
 ,
 
 366 N.C. 127
 
 , 130,
 
 726 S.E.2d 156
 
 , 159 (2012). Rule 404(b) is a "general rule of
 
 inclusion
 
 of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but
 
 one exception
 
 requiring its exclusion if its
 
 only
 
 probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged."
 
 State v. Coffey
 
 ,
 
 326 N.C. 268
 
 , 278-79,
 
 389 S.E.2d 48
 
 , 54 (1990). "To effectuate these important evidentiary safeguards, the rule of inclusion described in
 
 Coffey
 
 is constrained by the requirements of similarity and temporal proximity."
 
 State v. Al-Bayyinah
 
 ,
 
 356 N.C. 150
 
 , 154,
 
 567 S.E.2d 120
 
 , 123 (2002).
 

 There is no question that Schmieder's prior driving record was admissible to show his intent-malice-under Rule 404(b). "This Court has held evidence of a defendant's prior traffic-related convictions admissible to prove the malice element in a second-degree murder prosecution based on vehicular homicide."
 
 State v. Maready
 
 ,
 
 362 N.C. 614
 
 , 620,
 
 669 S.E.2d 564
 
 , 568 (2008) ;
 
 see also
 

 State v. Rich
 
 ,
 
 351 N.C. 386
 
 , 400,
 
 527 S.E.2d 299
 
 , 307 (2000). Likewise, "[w]hether defendant knew that he was driving with a suspended license tends to show that he was acting recklessly, which in turn tends to show malice."
 
 State v. Lloyd
 
 ,
 
 187 N.C. App. 174
 
 , 178,
 
 652 S.E.2d 299
 
 , 301 (2007). But Schmieder argues that his driving record should have been excluded because there was insufficient evidence that the prior convictions were factually similar, because some of the prior driving convictions were too far removed in time, and because there were significant gaps in time between the convictions and the present offense.
 

 "[R]emoteness in time
 
 generally
 
 affects only the weight to be given [404(b) ] evidence, not its admissibility. This is especially true when, as here, the prior conduct tends to show a defendant's state of mind, as opposed to establishing that the present conduct and prior actions are part of a common scheme or plan."
 
 Maready
 
 ,
 
 362 N.C. at 624
 
 ,
 
 669 S.E.2d at 570
 
 (2008) (citations omitted). Where "the evidence [is] fundamental to proving that defendant acted with malice," it is "clearly highly probative."
 
 Lloyd
 
 ,
 
 187 N.C. App. at 178
 
 ,
 
 652 S.E.2d at 301
 
 . And "the danger of unfair prejudice" can be "mitigated by the trial court's limiting instruction."
 

 Id.
 

 ;
 
 see also
 

 State v. Grice
 
 ,
 
 131 N.C. App. 48
 
 , 54,
 
 505 S.E.2d 166
 
 , 169-70 (1998).
 

 *327
 
 "The relevance of a temporally remote traffic-related conviction to the question of malice does not depend solely upon the amount of
 
 *100
 
 time that has passed since the conviction took place. Rather, the extent of its probative value depends largely on intervening circumstances."
 
 Maready
 
 ,
 
 362 N.C. at 624
 
 ,
 
 669 S.E.2d at 570
 
 . A defendant's older convictions can "constitute part of a clear and consistent pattern of criminality that is highly probative of his mental state at the time of his actions at issue here."
 

 Id.
 

 There is no bright-line rule for the maximum amount of time before a prior driving conviction is inadmissible, or maximum gap in time between convictions before a series of convictions is inadmissible.
 
 See
 

 id.
 

 at 625
 
 ,
 
 669 S.E.2d at 571
 
 .
 

 Here, the court explicitly found that the prior convictions on Schmieder's driving record were "similar" to the present offense and that "there was not much of a gap in time between convictions over the years." The court's finding of similarity is supported by the fact that the vast majority of the charges in the driving record involved the same types of conduct Schmieder was alleged to have engaged in here-namely speeding, illegal passing, and driving while his license was revoked. Although the State did not present evidence of the specific circumstances surrounding the prior convictions, the similarity was evident from the nature of the charges.
 

 The court's finding of temporal proximity is supported by the spread of the convictions over the entirety of Schmieder's driving record, from the year his license was issued up until the year of the accident at issue in this case, showing a consistent pattern of conduct including speeding, illegal passing, and driving with a revoked license. The gaps in time between charges, never greater than three or four years, were not significant. Moreover, many of the gaps in time between charges occurred during periods when Schmieder's license was suspended and he could not legally have been driving. The trial court properly determined that the time gaps in this pattern of conduct were less significant in light of the likely cause for the gaps-Schmieder's inability legally to drive during those times.
 

 Additionally, after the jury heard evidence of the driving record, the trial court gave a limiting instruction to the jury that the driving record was "received solely for the purpose of showing malice" and that the jury could consider it "only for the limited purpose for which it was received," thus limiting the risk of unfair prejudice. Simply put, the trial court properly determined that this evidence was admissible under Rule 404(b) and was well within its sound discretion to conclude that it was not unfairly prejudicial under Rule 403.
 

 Schmieder also contends that the trial court should have excluded the evidence because of the ten-year time limit on the admission of prior
 
 *101
 
 convictions under N.C. Gen. Stat. § 8C-1, Rule 609. But Rule 609 only applies to evidence used to impeach a witness's credibility, which is not the case here, and we find no legal basis to apply this inapplicable time limit from Rule 609 to non-impeachment evidence otherwise admissible under Rule 404(b). Accordingly, we hold that the trial court did not err in admitting evidence of Schmieder's prior driving offenses.
 

 II. Sufficiency of Evidence of Malice
 

 Schmieder next argues that the trial court erred in denying his motion to dismiss the second degree murder charge because the State presented insufficient evidence of malice. Because, as discussed above, the trial court properly admitted Schmieder's prior driving record, we reject this argument as well.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000). "Substantial evidence is such relevant evidence
 
 *328
 
 as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994).
 

 "Second-degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation."
 
 Grice
 
 ,
 
 131 N.C. App. at 53
 
 ,
 
 505 S.E.2d at 169
 
 . "Our courts have specifically recognized three kinds of malice:" (1) "a positive concept of express hatred, ill-will or spite, sometimes called actual, express or particular malice"; (2) "when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; and (3) "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification."
 

 Id.
 

 As noted above, "[t]his Court has held evidence of a defendant's prior traffic-related convictions admissible to prove the malice element in a second-degree murder prosecution based on vehicular homicide."
 

 *102
 

 Maready
 
 ,
 
 362 N.C. at 620
 
 ,
 
 669 S.E.2d at 568
 
 . Here, the State presented evidence that Schmieder knew his license was revoked at the time of the December 2016 accident and that he had a nearly two-decade-long history of prior driving convictions including multiple speeding charges, reckless driving, illegal passing, and failure to reduce speed. In addition to the evidence from his driving record, two witnesses to the accident testified that Schmieder was driving above the speed limit, following too close to see around the cars in front of him, and passing across a double yellow line without using turn signals. This evidence, considered together, was sufficient for a reasonable jury to infer that Schmieder acted with malice. We therefore hold that the trial court did not err in denying Schmieder's motions to dismiss the second degree murder charge.
 

 III. Sufficiency of Indictment
 

 Finally, Schmieder argues that indictment only charged him with second degree murder as a Class B1 felony, a charge for which he was acquitted, and that the indictment failed to charge him with the Class B2 version of second degree murder, for which he was convicted. As explained below, we reject this argument.
 

 "On appeal, this Court reviews the sufficiency of an indictment
 
 de novo.
 
 "
 
 State v. Wilson
 
 ,
 
 236 N.C. App. 472
 
 , 474,
 
 762 S.E.2d 894
 
 , 895 (2014). "[T]he failure of a criminal pleading to charge the essential elements of the stated offense is an error of law which may be corrected upon appellate review even though no corresponding objection, exception or motion was made in the trial division."
 
 State v. Anderson
 
 ,
 
 177 N.C. App. 54
 
 , 59,
 
 627 S.E.2d 501
 
 , 503-04 (2006).
 

 As an initial matter, the indictment contained all the necessary elements of the offense of second degree murder as a B2 felony. "Second-degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation."
 
 Grice
 
 ,
 
 131 N.C. App. at 53
 
 ,
 
 505 S.E.2d at 169
 
 . As explained above, there are several legal bases on which the State can rely to prove malice. But there is no requirement that the State identify in the indictment the particular theory of malice on which it will rely. Under
 
 N.C. Gen. Stat. § 15-144
 
 , "it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed)." Here, the indictment alleged that Schmieder "unlawfully, willfully, and feloniously and of malice aforethought did kill and murder Derek Lane Miller." This is sufficient to charge Schmieder with second degree murder as a B2 felony.
 

 *103
 
 Schmieder nevertheless contends that the indictment was insufficient because, by only checking the box labeled "Second Degree" and not checking the box beneath it labeled "Inherently Dangerous Without Regard to Human Life," Schmieder was misled into believing he was not being charged with that form of second degree murder. But by checking
 
 *329
 
 the box indicating that the State was charging "Second Degree" murder, and including in the body of the indictment the necessary elements of second degree murder, the State did everything necessary to inform Schmieder that the State will seek to prove second degree murder through any of the legal theories the law allows. Moreover, Schmieder has not shown that he actually was misled because only the "Second Degree" box was checked, and not the "Inherently Dangerous Without Regard to Human Life" box beneath it. The record indicates that, throughout this proceeding, Schmieder understood that the State would seek to introduce his prior driving record and argue that his pattern of repeated unlawful and dangerous driving demonstrated that he engaged in "an act which is inherently dangerous to human life" that was "done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief."
 
 Grice
 
 ,
 
 131 N.C. App. at 53
 
 ,
 
 505 S.E.2d at 169
 
 . Accordingly, we find no error in the trial court's judgment.
 

 Conclusion
 

 For the reasons discussed above, we find no error in the trial court's judgment.
 

 NO ERROR.
 

 Judges TYSON and BERGER concur.