IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-820

Filed 7 May 2024

Davie County, No. 19CRS51700

STATE OF NORTH CAROLINA

v.

JAMES CAMPBELL DOHERTY, Defendant.

Appeal by defendant from judgment entered 8 March 2023 by Judge Tonia A. Cutchin in Davie County Superior Court. Heard in the Court of Appeals 3 April 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Haley Ann Cooper, for the State.*

*Reece & Reece, by Mary McCullers Reece, for defendant-appellant.*

FLOOD, Judge.

Defendant James Campbell Doherty appeals from judgment entered 8 March 2023, arguing the trial court erred by (A) denying his motion to dismiss because a single kick to the dog was insufficient evidence to show a "cruel beating," and (B) failing to instruct the jury on the lesser included offense of misdemeanor animal cruelty. After careful review, we conclude a single kick was sufficient to show Defendant "cruelly beat" the dog because this interpretation of the statute adheres to the plain language and furthers the Legislature's intent to protect animals from malicious cruelty. We further conclude the trial court did not plainly err in failing to

instruct on misdemeanor cruelty to animals because the State presented substantial evidence of each element of felony cruelty to animals.

## I. <u>Factual and Procedural Background</u>

Glenda Wolff lived across the street from Defendant in a neighborhood in Advance, North Carolina. Ms. Wolff would typically walk her fourteen-year-old dachshund-beagle mix, Davis, "two to three times per day" around the cul de sac on which Ms. Wolff and Defendant lived. Ms. Wolff would typically walk Davis in a circle around the cul de sac, passing in front of Defendant's home. "Any time" Ms. Wolff or anybody else with a dog walked by Defendant's home, Defendant would activate the sprinklers in the yard.

On 13 November 2019, Ms. Wolff was walking Davis around the cul de sac and saw her neighbors, Mr. and Mrs. Einstein, driving towards her. Ms. Wolff stepped out of the road to let the Einsteins' car pass by. At the time their car was approaching, Ms. Wolff was standing directly in front of Defendant's yard. There are no sidewalks or curbs in the neighborhood, only a single lane road, and the yards bordering the road. Instead of driving by Ms. Wolff, the Einsteins stopped to talk to her and inquire about her husband who had recently had some health issues. While Ms. Wolff was talking to the Einsteins, the sprinklers came on in Defendant's yard. Then, Ms. Wolff noticed Defendant "run[] out of his house and across his lawn," approach Davis, and proceed to kick him in the stomach. After Defendant kicked Davis, he turned around and went back into his house.

Ms. Wolff called the police, who encouraged her to take Davis to the emergency veterinarian. After being kicked, Davis became "lifeless . . . limp . . . [and] couldn't walk [or] stand." Ms. Wolff took Davis to the emergency veterinarian where he was characterized as being in "shock" and diagnosed with internal bleeding. Davis was given an IV fluid resuscitation to restore blood tissue, a blood transfusion, and pain medication. Davis remained at the veterinary hospital for the night.

After Davis's diagnosis, Deputy Clayton Whittington with the Davie County Sheriff's Office took out charges against Defendant for felonious cruelty to animals.

On 6 January 2020, a Davie County Grand Jury indicted Defendant for felonious cruelty to animals. The matter came on for trial on 7 March 2023 in Davie County Superior Court. The State presented testimony of Ms. Wolff, Deputy Whittington, and Dr. Simmerson—the veterinarian who provided care for Davis.

Ms. Wolff testified to the above-described events that occurred on 13 November 2019. When asked about Defendant's actions that evening, Ms. Wolff testified that Defendant ran out of his house at a fast pace and said to her, "I told you to keep your dog off my property." At the time of the incident, Ms. Wolff was standing right at the end of Defendant's property, "half on the road and half on the grass." According to Ms. Wolff, Defendant kicked Davis so hard Davis "went up in the air and came down and yelped."

Ms. Wolff also testified to Davis's capabilities following the incident, representing to the trial court that, prior to Defendant kicking Davis, Davis could

jump on the bed or the couch, but he was unable to jump after his injury and had to be lifted onto the bed or couch.

Deputy Whittington testified that, when he questioned Defendant about kicking Davis, Defendant said he "popped the dog with his toe." Defendant further told Deputy Whittington he had a "bad history with dogs" and had told Ms. Wolff to "stay off his property."

Dr. Simmerson testified that she performed an abdominal ultrasound on Davis the day after the incident. The ultrasound showed a large amount of blood in his abdominal cavity, a mass in his central liver, sludge in his gall bladder, and chronic kidney damage in both kidneys. Dr. Simmerson testified that she had concluded the bleeding in Davis's abdominal cavity was the result of blunt force trauma and consistent with being kicked in the stomach. Davis's remaining maladies were common in a dog of Davis's age and not attributed to any external factors. When asked if, in her opinion, the injuries could have been life threatening had Davis not received emergency care, Dr. Simmerson responded, "definitely."

At the close of the State's evidence, Defendant made a motion to dismiss, arguing the State failed to present substantial evidence that Defendant "cruelly beat" Davis. The trial court denied the motion.

The sole evidence presented by Defendant was his own testimony. Defendant testified that he had repeatedly asked Ms. Wolff to keep Davis off his property. Defendant represented that he had "been attacked seven times by dogs" and had an

extreme fear as a result. He further stated that he does not want "anything to do with [dogs] . . . I just stay away from them. If a dog is near when I'm outside, I go inside. . . I want no interaction with them because I'm afraid of being attacked again."

When asked to describe what happened on 13 November 2019, Defendant testified that he turned the sprinklers on in an attempt to prompt Ms. Wolff to move away from his property. When this did not work, Defendant stood on the front porch and twice asked Ms. Wolff to leave his yard. After Ms. Wolff did not heed this request, Defendant made a "feint charge" at Ms. Wolff and Davis to scare them away. This attempt likewise was unsuccessful and Defendant then found himself two feet away from Davis, and he "panicked and kicked [his] foot out to get the dog away." According to Defendant, Davis did not go into the air as Ms. Wolff testified, but retreated back from Defendant's yard to stand at Ms. Wolff's feet.

At the conclusion of Defendant's testimony, Defendant, through counsel, renewed his motion to dismiss for insufficient evidence that he "cruelly beat" Davis, which the trial court again denied.

On 8 March 2023, Defendant was found guilty of felony cruelty to animals and sentenced to five to fifteen months' imprisonment, suspended for twenty-four months' supervised probation. Defendant orally noticed his appeal at the conclusion of his trial.

## II. **Jurisdiction**

This Court has jurisdiction to review this appeal from a final superior court

judgment pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

### III. Analysis

Defendant presents two issues on appeal: whether the trial court erred in failing to (A) dismiss the charge of felonious cruelty to animals because a single kick was insufficient to show Defendant "cruelly beat" Davis, and (B) instruct the jury on the lesser included offense of misdemeanor cruelty to animals.

### A. Motion to Dismiss

Our standard of review for an appeal of a motion to dismiss a criminal charge is whether, when considering the evidence in the light most favorable to the State, "the State presented substantial evidence of each element of the offense charged and of the defendant's guilt." *State v. Allred*, 131 N.C. 11, 19, 505 S.E.2d 153, 158 (1998). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Schmieder*, 265 N.C. App. 95, 101, 827 S.E.2d 322, 327–28 (2019) (citation omitted). "[T]he State is entitled to every reasonable intendment and every reasonable inference to be drawn from this evidence; contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *State v. Coble*, 163 N.C. App. 335, 337, 539 S.E.2d 109, 111 (2004).

Defendant argues the State did not present substantial evidence that Defendant "cruelly beat" Davis because one single kick is insufficient to meet the dictionary definition of "beat," which is "to strike something repeatedly." The State

argues the term "beat" should not be derived from its standalone interpretation as the statutorily defined "cruelly" modifies and characterizes "beat."

"In order to prove the offense of felony cruelty to animals, the State must present substantial evidence that a defendant did 'maliciously, torture, mutilate, maim, cruelly beat, disfigure, poison, or kill' an animal." *State v. Gerding*, 237 N.C. App. 502, 506–07, 767 S.E.2d 334, 337 (2014) (quoting N.C. Gen. Stat. § 14-1360(b)). The statute defines "cruelly" as "*any act*, omission, or neglect causing or permitting unjustifiable pain, suffering, or death." N.C. Gen. Stat. § 14-360(c) (emphasis added). The statute does not define "beat," and the term has likewise not been defined by the appellate courts of this State. This presents an issue of statutory interpretation that is one of first impression as to the definition of "cruelly beat."

"When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself. If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *State v. Fletcher*, 370 N.C. 313, 326, 807 S.E.2d 528, 538 (2017). "Although courts often consult dictionaries for the purpose of determining the plain meaning of statutory terms," *id.* at 327, 807 S.E.2d at 538,

> [t]he definition of words in isolation [] is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

*Dolan v. U.S. Postal Servs.*, 546 U.S. 481, 486, 126 S. Ct. 1252, 1257, 163 L. E. 2d 1079, 1087–88 (2006). If the statute is not clear and unambiguous, "[t]he intent of the Legislature controls the interpretation of the statute." *Fletcher*, 370 N.C. at 327, 807 S.E.2d at 539 (alteration in original) (citation omitted). "In ascertaining such intent, a court may consider the purpose of the statute and the evils it was designed to remedy, the effect of the proposed interpretations of the statute, and the traditionally accepted rules of statutory construction." *Id.* at 327, 807 S.E.2d at 539 (citation omitted).

Thus, we first look to the plain meaning of "beat" to determine how the statute is to be applied. Defendant is correct in his assertion that The Merriam-Webster Dictionary defines beat as "to strike repeatedly." *See Beat*, THE MERRIAM-WEBSTER DICTIONARY (11th ed. 2022). There are, however, other definitions of beat that indicate a person can "beat" something even if they only apply one strike or blow. *See Beat*, COLLINS DICTIONARY ("if you beat someone or something you hit them very hard" and "to beat on, at, or against something means to hit it hard);[1] *see also Beat*, DICTIONARY.COM ("a stroke or blow").[2] The Merriam-Webster Dictionary entry for "beat" includes a list of synonyms, one of which, "bash," is defined as "to strike

---

[1]*Beat*, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/beat (last visited 4 April 2024).

[2] *Beat*, DICTIONARY.COM, https://www.dictionary.com/browse/beat (last visited 4 April 2024).

violently." *See Bash*, THE MERRIAM-WEBSTER DICTIONARY.[3]  The plain meaning of "beat," therefore, could be understood to mean both a hard hit or strike, or repeated strikes.  "Beat" has not been exclusively defined as requiring repeated strikes.

Accordingly, "cruelly beat," can be applied to any act, such as a kick, that causes "unjustifiable pain, suffering, or death to an animal."  *See* N.C. Gen. Stat. § 14-360(c).  Further, this plain meaning comports with the Legislature's clear intent in enacting this statute, which was to protect animals from *any* intentional and malicious act that may lead to "unjustifiable pain, suffering, or death."  *See id.*  The single act of kicking a dog so hard as to cause internal bleeding is certainly the type of behavior the statute intended to prevent and would meet the definition of "cruelly beat."

We therefore hold, under the plain meaning of the words, "cruelly beat" can apply to any act that causes the unjustifiable pain, suffering, or death to an animal, even if it is just one single act.  To hold otherwise would allow a person to kick a dog so hard they suffer life-threatening injuries—such as the case here—but not be subject to felonious cruelty to animals because it was "just" one kick.

Defendant objects to this conclusion by arguing a single kick cannot support a conviction for felony cruelty to animals because a review of North Carolina case law "yields no convictions for acts comparable to a single kick."  While not physically

---

[3] *Bash*, THE MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/bash (last visited 4 April 2024).

comparable to a single kick, this Court has, in an unpublished opinion, held that one single act was sufficient to show felony cruelty to animals where the defendant was alleged to have tortured a cat. *See State v. Ford*, __ N.C. __, 896 S.E.2d. 67 (2024) (unpublished); *see also* N.C. Gen. Stat. § 14-1360(b)) (2023) (a person is guilty of animal cruelty if they "maliciously, torture . . . cruelly beat, disfigure, poison, or kill an animal").

In *Ford*, the defendant was convicted for felony cruelty to animals based on torture after he intentionally ran over with his pickup truck the stroller in which a cat was sitting. *Id.* at *2. On appeal, the defendant argued the trial court erred in failing to grant his motion to dismiss because the legal definition of "torture" requires a course of conduct and "a single malicious act" was insufficient. *Id.* at *3. This Court disagreed, holding the Legislature, in the context of the animal cruelty statute, defined torture in the singular, and this definition—the same definition provided for "cruelly"—could clearly be applied to "any act," and the statute did not require a "course of conduct." *Id.* at *5–4.

Here, Defendant appears to be minimizing the effects of a "single kick" compared to, for example, being run over with a pickup truck. If the comparison was merely a kick versus being run over with a pickup truck, it would seem on its face that running over a cat is the more egregious offense. The cat in *Ford*, however, miraculously suffered no physical injuries but appeared to have lasting "emotional" injuries. *See id.* at *2. Here, Defendant's single kick to Davis caused severe, life-

threatening injuries that would have likely resulted in Davis's death had Ms. Wolff not sought emergency care. As explained above, the Legislature clearly intended to protect animals from unjustified pain, suffering, or death. The means of inflicting such injury seem to be less important than the actual injury itself.

Accordingly, the trial court did not err in denying Defendant's motion to dismiss because, under the plain meaning of the statute and in furtherance of the Legislature's intent, the State presented substantial evidence that Defendant "cruelly beat" Davis when he kicked Davis so hard as to cause internal bleeding. *See Fletcher*, 370 N.C. at 327, 807 S.E.2d at 539.

## B. Lesser Included Offense

As a threshold matter, while Defendant concedes he did not object to the jury instructions, he argues that the trial court's failure to instruct on misdemeanor animal cruelty as a lesser included offense amounted to plain error. On the other hand, the State argues Defendant's affirmative non-objection to the instructions was invited error. We disagree with the State as to invited error. We further disagree with Defendant that the jury instructions were plain error.

"[U]nder the doctrine of invited error, a party cannot complain of a charge given at his request, or which is in substance the same as one asked by him[.]" *State v. Miller*, 289 N.C. App. 429, 432–33, 889 S.E.2d 231, 234 (2023) (citation and internal quotation marks omitted). "A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct. Thus, a defendant

who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *Id.* at 433, 889 S.E.2d at 234. Our appellate courts, however, have consistently held that failure to object to jury instructions *alone* is insufficient to waive plain error review. *See State v. Hooks*, 353 N.C. 629, 633, 548 S.E.2d 501, 505 (2001) (holding the defendant's failure to object to the trial court's instructions waived appellate review of the issue except for plain error review); *see also State v. Hardy*, 353 N.C. 122, 131, 540 S.E.2d 334, 342 (2000) (applying plain error where the defendant failed to object to the instructions even though he had "ample opportunity" to do so); *State v McLymore*, 279 N.C. App. 34, 36, 863 S.E.2d 807, 809 (2021) (applying plain error review where the defendant failed to object to jury instructions despite having "at least three opportunities to do so"); *State v. Harding*, 258 N.C. App. 306, 311, 813 S.E.2d 254, 259 (2018) (applying plain error review where the defendant "failed to object, actively participated in crafting the challenged instructions, and affirmed it was 'fine'"); *but cf. State v. White*, 349 N.C. 535, 570, 508 S.E.2d 253, 275 (1998) (holding a defendant invited error when he failed to submit instructions in writing as required by statute *and* did not object despite being given the opportunity to do so); *State v. Thompson*, 359 N.C. 77, 103–04, 604 S.E.2d 850, 869–70 (2004) (invoking invited error where the trial court amended the defendant's proposed instructions with the defendant's consent *and* the defendant did not object when the instructions were read to the jury).

Here, Defendant did not object to the instructions on felonious cruelty to

animals during the charge conference. Prior to the trial court reading the instructions to the jury, it asked if defense counsel had any objections to the verdict sheet or the jury instructions, to which defense counsel stated, "[n]o Your Honor. Thank you." This affirmative non-objection, on its own, is insufficient to show Defendant invited error. *See Hooks*, 353 N.C. at 633, 548 S.E.2d at 505. We therefore review for plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation and internal quotation marks omitted). Having determined the appropriate standard of review to apply to this issue, we now turn to the merits of Defendant's argument.

"It is well settled that the trial court must submit and instruct the jury on a lesser included offense when . . . there is evidence from which the jury could find that defendant committed the lesser included offense." *State v. Wright*, 240 N.C. App. 270, 272, 770 S.E.2d 757, 759 (2015) (citation omitted). "The trial court is not[, however,] obligated to give a lesser included instruction if there is no evidence giving rise to a reasonable inference to dispute the State's contention." *State v. Lucas*, 234 N.C. App.

247, 256, 758 S.E.2d 672, 679 (2014) (citation omitted).

Here, the trial court instructed the jury that, to find Defendant guilty of felony

cruelty to animals, it must find three elements:

> First, [D]efendant cruelly beat Davis, a dog. Cruelly is an act, omission or neglect causing or permitting unjustifiable pain[,] [s]uffering or death.
>
> Second, [D]efendant acted intentionally; that is, knowingly.
>
> And, third, that [D]efendant acted maliciously. To act maliciously means to act intentionally and with malice or bad motive. As used herein, to act with malice or bad motive is to possess a sense of personal ill will to activate or incite [D]efendant to act in a way to cause harm to the animal. It also means the condition of mind that prompts a person to intentionally inflict serious harm or injury to an animal, which proximally results in injury to the animal.
>
> . . . .
>
> If you find from the evidence, beyond a reasonable doubt, that one or about the alleged date, [D]efendant intentionally, maliciously and cruelly beat Davis, a dog, it would be your duty to return a verdict of guilty.

As explained above, there was sufficient evidence to support the jury's finding

that Defendant was guilty of felonious cruelty to animals. The State presented

substantial evidence that Defendant maliciously and intentionally kicked Davis, and

Defendant presents no argument on appeal contesting this element. Further, the

State also presented substantial evidence that one single kick showed Defendant

"cruelly beat" Davis as defined by the statute. Finally, it is undisputed that Davis

suffered severe, life-threatening injuries. Given the substantial evidence presented by the State, Defendant has not, and cannot, show that the jury likely would have found Defendant not guilty of felony cruelty to animals, and convicted Defendant for misdemeanor cruelty to animals had that instruction been submitted.

Accordingly, the trial court did not err, let alone plainly err, in failing to instruct on misdemeanor cruelty to animals where there was no dispute as to the evidence supporting felony cruelty to animals. *See Lucas*, 234 N.C. App. at 256, 758 S.E.2d at 679

## IV. <u>Conclusion</u>

We conclude the State presented substantial evidence that Defendant "cruelly beat" Davis, a dog, because one single kick does constitute "any act" that resulted in serious injuries or suffering, and the term "beat" does not require repeated strikes. We further conclude the trial court did not plainly err in failing to instruct on misdemeanor cruelty to animals.

NO ERROR.

Judges ARROWOOD and WOOD concur.