An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-878

Filed 16 July 2025

Forsyth County, Nos. 22CRS053931-330, 23CRS000605-330

STATE OF NORTH CAROLINA

v.

THOMAS HOWARD PRICE, JR., Defendant.

Appeal by Defendant from judgment entered 18 March 2024 by Judge Stephanie L. Reese in Forsyth County Superior Court. Heard in the Court of Appeals 9 April 2025.

> *Attorney General Jeff Jackson, by Senior Deputy Attorney General Kunal J. Choksi, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon Mayes, for Defendant-Appellant.*

CARPENTER, Judge.

Thomas Howard Price, Jr. ("Defendant") appeals from judgment entered after a jury found him guilty of felony domestic violence protective order ("DVPO") violation. Following his conviction, Defendant pleaded guilty to attaining habitual-felon status. On appeal, Defendant argues the trial court erred by admitting certain

Rule 404(b) evidence and denying his motion to dismiss. After careful review, we discern no error.

## I. Factual & Procedural Background

Defendant and Sonya Price ("Sonya") married in 2009 and had two children together. Beginning in June 2018, Defendant routinely emptied Sonya's bank account and confiscated her car keys and phone every day when she returned home from work. Defendant also installed an alarm system in the home; he alone knew the code. Every night Defendant would activate the alarm, effectively preventing Sonya from leaving the home without Defendant's knowledge.

In June 2018, Sonya left work to find that Defendant had swapped her Subaru Legacy with the parties' Chrysler Pacifica, which had little to no fuel. Realizing she did not have enough fuel to make it home, Sonya drove to a nearby gas station. When she attempted to refuel the Chrysler, however, her card declined due to insufficient funds. Because Defendant had taken Sonya's phone the night before, Sonya had to use the gas station's phone to call Defendant to ask him to replenish her account.

Approximately one week later, Sonya left work early to file a police report because "everything kept escalating." When Sonya arrived at home, Defendant told Sonya that he knew where she had been, despite Sonya not telling Defendant she visited the police department. After Defendant confronted Sonya, she took the children to a movie. When she did not return home at the time Defendant expected, Defendant called the police. When Sonya and the children returned home, they were

greeted by police and child protective services ("CPS"). The police and CPS advised Sonya to leave with the children, but Sonya was "too afraid to leave." Before departing, the police made Defendant return Sonya's phone to her because they were uncomfortable leaving Sonya without the means to contact 9-1-1 in case of emergency. Shortly after CPS and police left, however, Defendant took Sonya's phone back.

In July 2018, Defendant and Sonya argued about a diamond ring Defendant had purchased for Sonya that he wanted back. Following the argument, Sonya left the house with the children but returned approximately thirty minutes later. As Sonya backed her car into the driveway, Defendant sped into the driveway and intentionally collided with Sonya's car. Thereafter, Sonya obtained an ex parte DVPO against Defendant; however, she promptly dismissed it after Defendant erroneously told Sonya that if she continued to talk to Defendant about the children she was going to get arrested for violating the DVPO.

On 5 June 2019, Defendant sent Sonya a threatening email at work, stating: "Today is the day, mark your calendar." When Sonya returned home, Defendant accused her of having an extra phone that he did not know about. An argument ensued and Defendant demanded that Sonya take off her clothes. Sonya took off her pants but refused to remove any more clothing because the children were present. During the argument, Defendant told Sonya he would "kill the [children] and let [her] live with it for the rest of [her] life." Sonya managed to flee to a neighbor's house and called the police. The next morning, Sonya sought and obtained an ex parte DVPO.

On 13 July 2019, following a hearing on the matter, the trial court granted Sonya a one-year DVPO against Defendant. In the DVPO, the trial court concluded Defendant committed acts of domestic violence by placing Sonya in fear of imminent serious bodily injury and threatening to use a deadly weapon against Sonya and the children. The DVPO prohibited Defendant from assaulting, threatening, abusing, following, harassing, or interfering with Sonya or the children. Additionally, the DVPO ordered that Defendant have no contact with Sonya, including any "[D]efendant-initiated contact, except through an attorney, direct or indirect, by means such as telephone, personal contact, email, pager, gift-giving or telefacsimile machine."

Despite the DVPO, Defendant continued to send Sonya text messages and emails. Defendant also showed up at Sonya's work to lodge a complaint about her with the compliance office. Although Sonya did not see Defendant that day, Sonya became aware that Defendant visited her work after she was interviewed by the compliance office and human resources.

Additionally, after issuance of the DVPO, Sonya discovered twenty-six cameras that Defendant had hidden in and around the house, including in picture frames and stuffed animals. Defendant had also installed several cameras outside the home, including in the trees. Sonya contacted Sergeant Jennifer Doby of the Winston-Salem Police Department to report Defendant's attempted communications

and the cameras. According to Sergeant Doby, Defendant's messages to Sonya were "threatening" and "cryptic."

Sonya continued to renew the DVPO, extending its validity through July 2022. By April 2022, a divorce from bed and board had been entered between Sonya and Defendant. In May 2022, Defendant mailed a handwritten letter, dated 27 April 2022, to Sonya's attorney. Sonya's attorney shared the letter with Sonya, who recognized Defendant's handwriting.

The first paragraph of the letter stated:

> The reason behind this correspondence is to inform you of my intent to have my "Power of Attorney," Mr. Scott McDaniel, to file police reports with the Winston-Salem Police Department for larceny of 2 motor vehicles from [Sonya's home address]. The first vehicle being a 2001 Chevy 1500 truck and the second being a 2018 Subaru Legacy. Also, a third item being a 10 foot long utility trailer.

Sonya was not familiar with Scott McDaniel, so she conducted an internet search to identify him. From the search, Sonya learned there was a Scott McDaniel who was currently in jail, awaiting trial on charges of child abuse and first-degree murder of a child. Although unaware at the time, Sonya later learned that Scott McDaniel was an acquaintance of Defendant's and was not his power of attorney. Sonya understood Defendant's reference to Scott McDaniel to be a threat against the children's safety.

The next paragraph of the letter stated:

> Both motor vehicles and the utility trailer were solely purchased with funds I inherited from my father and solely

> titled in my name alone! I have info that your client, illegally had a set of keys made to my Subaru and has been driving my car, which amounts to larceny of a motor vehicle . . . I also have info. that your client allowed a family member to drive away with the utility trailer. And had my truck towed away . . .

When Defendant mailed the letter, the Subaru, the truck, and the utility trailer were all parked in the driveway at Sonya's home. Sonya did have a set of keys made for the Subaru and loaned the utility trailer to her sister on one occasion. But because Sonya never shared this information with Defendant and only recalled discussing the parties' vehicles on one occasion while she was on the phone in the driveway, Sonya was afraid she was still being surveilled by Defendant. Due to the level of detail in the letter and her discovery of the cameras, Sonya was concerned that someone was still watching or listening to her and the children.

Finally, the letter stated the following, in relevant part:

> As much as I would love to see her get arrested . . . Your client is still the mother of my sons, so I am going to give her one opportunity to get my vehicles and utility trailer parked back in my driveway before we go to the police.

After reading the letter, Sonya felt "afraid" and was worried that Defendant "was going to try and do something to [her]." She was "scared[,] confused and really, really terrified" and considered the letter to be a threat against her and the children's safety. Further, Sonya was confused as to why Defendant would threaten to take away the Subaru, considering it was her only form of transportation. Because of the letter, Sonya contacted the police.

On 11 September 2023, a Forsyth County grand jury indicted Defendant for one count each of misdemeanor DVPO violation and felony DVPO violation. Prior to Defendant's trial, the State filed a notice of intent to introduce Rule 404(b) evidence of Defendant's prior acts that resulted in issuance of the DVPO. In response, Defendant filed a motion to prohibit testimony regarding any past incidents of domestic violence. Following a hearing on the matter, the trial court allowed the State to introduce some, but not all, of the prior bad acts noticed by the State for the limited purpose of showing Defendant's motive, intent, malice, absence of mistake, and modus operandi in sending the letter. Specifically, the trial court restricted the State from introducing prior acts of physical abuse but allowed evidence of Defendant's previous threats and other conduct that resulted in issuance of the DVPO. On 12 March 2024, Defendant's case proceeded to trial.

At the close of the State's evidence, Defendant moved to dismiss, which the trial court denied. Defendant renewed his motion at the close of all the evidence. Again, the trial court denied Defendant's motion. The trial court instructed the jury that it could only consider the 404(b) evidence for non-propensity purposes. The jury found Defendant guilty of felony DVPO violation and Defendant pleaded guilty to attaining habitual-felon status. The trial court sentenced Defendant to between ninety and one-hundred-twenty months of imprisonment. Defendant gave oral notice of appeal in open court and filed written notice of appeal on 18 March 2024.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

### III.  Issues

The issues are whether the trial court erred by admitting the Rule 404(b) evidence and denying Defendant's motion to dismiss.

### IV.  Analysis

#### A.  Rule 404(b)

First, Defendant argues the trial court erred by admitting the Rule 404(b) evidence because his prior bad acts were not "close enough in time" or "similar enough" to the handwritten letter to prove motive, intent, lack of mistake, or a modus operandi.  We disagree.

This Court "review[s] de novo the legal conclusion that [] evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).  " 'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.' " *State v. Jones*, 288 N.C. App. 175, 179, 884 S.E.2d 782, 788 (2023) (quoting *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008).

"Generally, Rule 404 acts as a gatekeeper against 'character evidence': evidence of a defendant's character . . . admitted 'for the purpose of proving that he acted in conformity therewith on a particular occasion.'" *State v. Pabon*, 380 N.C. 241, 258, 867 S.E.2d 632, 643–44 (2022) (quoting N.C. Gen. Stat. § 8C-1, Rule 404(a)

(2021)). Evidence of other crimes, wrongs, or acts is admissible, however, for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). Rule 404(b) is a "rule of *inclusion*[,]" *State v. Coffey*, 326 N.C. 268, 278–79, 389 S.E.2d 48, 54 (1990) (emphasis in original), because character evidence is generally admissible when offered for a permissible purpose, *Pabon*, 380 N.C. at 258, 867 S.E.2d at 644. Ultimately, character evidence is inadmissible "if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 278–79, 389 S.E.2d at 54 (emphasis in original).

In considering the admissibility of character evidence offered for a permissible purpose, the trial court looks to the "twin north stars: similarity and temporal proximity." *Pabon*, 380 N.C. at 258, 867 S.E.2d at 644. Regarding similarity, "near identical circumstances are not required . . . ." *Beckelheimer*, 366 N.C. at 132, 726 S.E.2d at 160 (citing *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 890 (1991)). Instead, "the incidents need only share 'some unusual facts' that go to a purpose other than propensity for the evidence to be admissible." *Id.* at 132, 726 S.E.2d at 160 (quoting *Stager*, 329 N.C. at 304, 406 S.E.2d at 890). The similarities do not need to "rise to the level of the unique and bizarre," *id.* at 131, 726 S.E.2d at 159 (citation omitted), but they must "support the reasonable inference that the same person committed both the earlier and the later crimes," *State v. Green*, 321 N.C. 594, 604,

365 S.E.2d 587, 593 (1988) (citation omitted); *see also State v. Gillard*, 386 N.C. 797, 811, 909 S.E.2d 226, 245 (2024) ("[T]he ultimate question is one of 'logical relevancy.'").

Temporal proximity "must be considered in light of the specific facts of each case and the purposes for which the evidence is being offered." *State v. Hipps*, 348 N.C. 377, 405, 501 S.E.2d 625, 642 (1998); *see also State v. Gray*, 210 N.C. App. 493, 507, 709 S.E.2d 477, 487 (2011) ("[I]t is clear that there are no bright line rules when considering the remoteness prong of the Rule 404(b) admissibility test."). If, for example, the evidence is used to show "intent, motive, knowledge, or lack of accident[,]" then "remoteness [in time] is less significant." *Hipps*, 348 N.C. at 405, 501 S.E.2d at 642 (citations omitted). Generally, the temporal proximity requirement " 'affects only the weight to be given [404(b)] evidence, not its admissibility.' " *State v. Schmieder*, 265 N.C. App. 95, 99, 827 S.E.2d 322, 326 (2019) (quoting *State v. Maready*, 362 N.C. 614, 620, 669 S.E.2d 564, 568 (2008)). This is especially true when the 404(b) evidence " 'tends to show a defendant's state of mind . . . .' " *Id.* at 99, 827 S.E.2d at 326 (quoting *Maready*, 362 N.C. at 624, 669 S.E.2d at 570).

Defendant argues the admission of his prior bad acts violated Rule 404(b), because his letter addressed to Sonya's attorney was not sufficiently similar to his previous threats against Sonya, which were communicated directly to Sonya. Defendant further asserts that his prior bad acts do not satisfy the temporal proximity requirement because they were too remote. Notwithstanding the

difference in *how* the threats were transmitted to Sonya, key similarities exist between the contents of the letter and Defendant's previous threats. Further, the letter was not too remote in time to render the 404(b) evidence inadmissible.

Defendant has a well-documented history of engaging in threatening and harassing conduct directed at Sonya through specific means, including control of the parties' vehicles, threats against the children, threats of taking legal action, and surreptitious use of surveillance. These same methods of exerting control are either directly mentioned or alluded to in Defendant's letter. Although Defendant may not have previously threatened Sonya by letter, his prior threats are sufficient to support a conclusion that Defendant sent the letter with the intent to harass and threaten Sonya. When viewed in totality, the prior acts and the letter reflect a consistent pattern of threatening Sonya through references to their vehicles, the children, legal action, and surveillance. *See State v. Lloyd*, 354 N.C. 76, 89–90, 552 S.E.2d 596, 609 (2001) (Evidence of prior acts is admissible "if it is relevant to establish a pattern of behavior on the part of the defendant tending to show that the defendant acted pursuant to a particular motive") (citation omitted).

Defendant attempts to differentiate his prior bad acts from the letter by arguing his prior bad acts involved direct communications to Sonya, whereas the letter was addressed and mailed to her attorney. This Court has explained, however, that the similarity prong of Rule 404(b) focuses " 'on the similarities and not the differences between the two incidents.' " *Gillard*, 386 N.C. at 815, 909 S.E.2d at 247

(quoting *State v. Pickens*, 385 N.C. 351, 359, 893 S.E.2d 194, 200 (2023)). Notwithstanding the differences in the method of delivery, the overlap of "some unusual facts" satisfies the similarity requirement. *See Beckelheimer*, 366 N.C. at 132, 726 S.E.2d at 160. Thus, Defendant's prior threats were sufficiently similar to the letter and demonstrate Defendant's motive or intent in writing the letter—to threaten and harass Sonya.

As for the temporal proximity requirement, Defendant's prior threats occurred in 2018 and 2019, approximately three years before the letter. Not only were the prior threats offered for a proper purpose, "remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge or lack of accident[,]" as is the case here. *See State v. Carpenter*, 361 N.C. 382, 388, 646 S.E.2d 105, 110 (2007) (internal quotation marks and citation omitted). Finally, because remoteness in time affects primarily "the weight to be given [404(b)] evidence, not its admissibility[,]" we conclude Defendants' prior threats were not so remote in time to render the 404(b) evidence inadmissible. *See Schmieder*, 265 N.C. App. at 99, 827 S.E.2d at 326. In sum, because Defendant's prior bad acts satisfied both the similarity and temporal proximity requirements, the trial court did not err by admitting the 404(b) evidence.

**B. Motion to Dismiss**

Next, Defendant argues the trial court erred by denying his motion to dismiss for insufficient evidence because he sent the letter to Sonya's attorney and did not threaten, harass, or interfere with Sonya in violation of the DVPO. We disagree.

This Court reviews the denial of a motion to dismiss de novo. *State v. Walters*, 276 N.C. App. 267, 270, 854 S.E.2d 607, 610 (2021) (citation omitted). " 'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.' " *Jones*, 288 N.C. App. at 179, 884 S.E.2d at 788 (quoting *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294).

A trial court properly denies a motion to dismiss when "there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 62, 650 S.E.2d at 33 (citation omitted). The evidence is considered "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Agustin*, 229 N.C. App. 240, 242, 747 S.E.2d 316, 318 (2013) (citation omitted).

To establish a DVPO violation, the State must show: "(1) there was a valid domestic violence protective order, (2) the defendant violated that order, and (3) did so knowingly." *State v. Williams*, 226 N.C. App. 393, 406, 741 S.E.2d 9, 19 (2013) (citing N.C. Gen. Stat. § 50B-4.1) (2008)). "Knowingly" means "[the] defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged." *Id.* at 406, 741 S.E.2d at 19 (citations omitted). Under Chapter 50B, a DVPO violation rises to the level of a felony if the defendant: (1) commits a felony when violating the

DVPO, *see* N.C. Gen Stat. § 50B-4.1(d); (2) knowingly violates a DVPO after having been previously convicted of two misdemeanor offenses under Chapter 50B, *see* N.C. Gen. Stat. § 50B-4.1(f); (3) knowingly violates a DVPO by failing to stay away from a place, or a person, as directed under the terms of the DVPO while in possession of a deadly weapon, *see* N.C. Gen. Stat § 50B-4.1(g); or (4) enters a safe house where the protected person resides, *see* N.C. Gen. Stat § 50B-4.1(g1). *See* N.C. Gen. Stat. § 50B-4.1 (2023).

Here, the DVPO ordered that Defendant "not assault, threaten, abuse, follow, harass (by telephone, visiting the home or workplace, or other means), or interfere with [Sonya]." Additionally, Defendant was barred from contacting Sonya, including "any [D]efendant-initiated contact, except through an attorney[.]" Defendant contends he complied with the DVPO, because it expressly permitted communication with Sonya's attorney. He further asserts that the letter was limited to addressing legal claims regarding his property.

When considering the evidence in the light most favorable to the State, however, we conclude there is substantial evidence demonstrating the purpose of the letter was to threaten or harass Sonya. We are not persuaded by Defendant's argument that he did not violate the DVPO because he sent the letter to Sonya's attorney instead of Sonya. Defendant referenced "your client" several times throughout the letter, revealing Sonya, not Sonya's attorney, was Defendant's intended recipient of the messages being conveyed by the letter. Further it is illogical

for Defendant to argue he could not have known that Sonya's attorney would share the letter with Sonya considering Defendant threatened to take legal action against Sonya. Moreover, the letter addressed the status of the parties' vehicles and falsely claimed that an individual who had been charged with murdering a child was Defendant's power of attorney. Considering the letter and its contents, the 404(b) evidence, and Sonya's testimony, a rational juror could conclude the letter contained messages to Sonya and thinly-veiled threats directed at Sonya in violation of the DVPO. *See Agustin*, 229 N.C. App. at 242, 747 S.E.2d at 318. Accordingly, the trial court did not err by denying Defendant's motion to dismiss.

## V. Conclusion

The trial court did not err by admitting the Rule 404(b) evidence or denying Defendant's motion to dismiss. Accordingly, we discern no error.

NO ERROR.

Judges COLLINS and HAMPSON concur.

Report per Rule 30(e).